Submitted September 30, 2009, affirmed April 14, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY ELAINE PETERSEN,
*Defendant-Appellant.*

Harney County Circuit Court
070282CR; A137490

228 P3d 721

Peter Gartlan, Chief Defender, Appellate Division, and Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Breithaupt, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Defendant, who was convicted of first-degree official misconduct, ORS 162.415, argues on appeal that the trial court erred in denying her motion for a judgment of acquittal. For the reasons set out below, we affirm.

Because defendant was convicted, we describe the facts in the light most favorable to the state. *State v. Johnson,* 342 Or 596, 598, 157 P3d 198 (2007), *cert den,* 552 US 1113 (2008). Defendant worked as a police dispatcher for Harney County. Late one morning, she received a call from her husband on a recorded business line. Defendant's husband reported to her that a dog had come into their yard and attacked their dog, that defendant's husband had chased the other dog away by shooting it with a blunt-tipped arrow, and that the arrow remained in the dog. Defendant's husband called back a few minutes later to discuss the issue again, and defendant asked him if he wanted her to have a sheriff's deputy come and talk to him about the situation. He responded that he wanted to register a complaint about the dog coming onto the property and attacking their dog.

Approximately 10 minutes after the initial call from her husband, defendant called Deputy Alexander and told him that she had received word from her husband that a dog had entered their yard and attacked their dog and that her husband "got his bow and hit him with a blunt-tipped arrow, and he took off running." Alexander understood that to mean that defendant's husband had shot the dog with a blunt-tipped arrow, using his bow. Defendant did not report to Alexander that the arrow remained in the dog, although the log notes that she made contemporaneously with the calls reflected that information. Alexander assumed that, because the arrow was a blunt-tipped one, it had not injured the dog. Approximately an hour later, Alexander responded to the call by visiting defendant's property and speaking with defendant's husband. Alexander left to investigate a domestic violence complaint, and then returned to defendant's husband, at which point he discovered that the dog defendant's husband had shot with the arrow had been injured. The dog was discovered several hours later by its owner and treated for the arrow wound.

Various recorded conversations on the business line between defendant, her husband, the deputy, and the sheriff reveal that defendant was upset to discover that her husband might be in trouble for shooting the dog and that she felt he had a right to shoot the dog in order to protect their dog from attack.

At trial, Alexander testified that, had defendant relayed to him that the dog had been injured when she first called him, he would have investigated the situation more quickly. The sheriff testified that, given the way the matter was first reported, it was investigated as a "dog at large" complaint and was not given high priority because it was regarded as a "nuisance call" by defendant's husband. He stated that, had an officer been told that a dog had a serious injury, an officer would have responded "immediately." The sheriff further testified that police dispatchers are expected to obtain all relevant information and to relay it to police officers "in a complete and truthful manner."

The state's theory of the case was that defendant, by failing to mention that her husband had reported that the arrow was still in the dog that he had shot, had committed official misconduct because, "with intent to obtain a benefit," she had "knowingly fail[ed] to perform a duty imposed upon the public servant by law or one clearly inherent in the nature of office." ORS 162.415(1)(a). That is, the state's proof was that defendant, with intent to benefit her husband, withheld information (the arrow in the dog) and in doing so, failed to perform a duty of her job—the duty of providing complete information to police officers investigating complaints.

Defendant moved for a judgment of acquittal, arguing that there was insufficient evidence to create a jury question as to whether defendant acted with intent to obtain a benefit and that she failed to perform a duty as defined by ORS 162.415. The trial court denied the motion, concluding that there was sufficient evidence to present to the jury as to whether defendant intentionally hid information from the deputy to delay the investigation in order to benefit her husband.

Defendant reiterates those arguments on appeal and that the offense was "not intended for ordinary neglect or

negligent performance of a duty." Defendant asserts that, because she reported sufficient information for the deputy to understand that the dog had been shot with an arrow, withholding the information that the arrow remained in the dog did not involve a failure "to perform a duty imposed upon [her] by law or one *clearly* inherent in the nature of office." ORS 162.415(1)(a) (emphasis added). Defendant asserts that her report was sufficient to put the deputy on notice of a potential injury to the animal, and thus she did relay the pertinent information in a "complete and truthful manner" as required by her training.

We disagree. The state presented evidence that, had defendant relayed the "complete" information that she had, the sheriff's office would have handled the case differently. Moreover, to the extent that defendant is suggesting that the evidence reflects only a mental state of negligence rather than a "knowing" mental state, the state presented sufficient evidence from which a factfinder could infer that defendant acted with a "knowing" mental state when she withheld information about the dog's injury from the deputy.[1]

■    Finally, defendant asserts that there was no evidence that she withheld the information about the dog's injury in order to benefit her husband. She argues that there was insufficient evidence that she intended to minimize her husband's culpability or to delay the police response to the report. Suffice it to say that the telephone calls in the record—which included defendant arguing with the sheriff and the deputy about the blameworthiness or lack thereof of her husband's conduct—when viewed in the light most favorable to the state, support the state's theory that defendant intended to minimize her husband's culpability. Finally, defendant asserts that, because her husband was convicted of animal abuse for having shot the dog, no benefit was conferred on him by her withholding information about the dog's injury. The statute, however, does not require that a benefit actually be obtained, but only that the failure to perform a duty be done "with intent to obtain a benefit." ORS 162.415.

---

[1] A person acts "knowingly" when the "person acts with an awareness that the conduct of the person is of such a nature as described or that a circumstance so described exists." ORS 161.085(8).

In sum, the trial court properly denied defendant's motion for a judgment of acquittal.

Affirmed.